FILED

98 JAN 13 PM 4:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JAN 13 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA GARRETT,<br><br>    Plaintiff<br><br>vs.<br><br>THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA IN BIRMINGHAM,<br><br>    Defendant | CIVIL ACTION NO.<br><br>97-AR-0092-S |
| MILTON ASH,<br><br>    Plaintiff<br><br>vs.<br><br>ALABAMA DEPARTMENT OF YOUTH SERVICES,<br><br>    Defendant | CIVIL ACTION NO.<br><br>97-AR-2179-S |

**MEMORANDUM OPINION**

In crucial respects the two above-captioned cases, separate and not consolidated, are identical, and, thus, a single opinion can address defendant's motion for summary judgment in each case. Both cases involve claims by plaintiffs against employers that are instrumentalities of the State of Alabama. Both plaintiffs invoke the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973("Rehab Act"), 29 U.S.C. §§ 701, *et seq.* CV 97-AR-0092 distinguishes itself by also invoking the Family and Medical Leave

1

Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* Defendants' motions for summary judgment are based on identical contentions that the federal statutes invoked by plaintiffs cannot apply to a state instrumentality and that, despite Congressional intent to abrogate the state's Eleventh Amendment immunity, Congressional intent in that regard exceeds its constitutional authority.

Both defendants concede that, when Congress expressly relied on Section 5 of the Fourteenth Amendment and the Equal Protection Clause in enacting the ADA and the Rehab Act, it fully intended to penetrate defendants' Eleventh Amendment shield in order to make each statute apply to state employers as well as to private employers. The question here, then, is not the question addressed by this court in *MacPherson v. University of Montevallo*, 938 F. Supp. 785 (N.D. Ala. 1996), which dealt with the applicability of another statute, the Age Discrimination in Employment Act ("ADEA"), to a state entity. In the ADEA Congress also expressed an intent to override state immunity under the Eleventh Amendment. But, as distinguished from the ADA and the Rehab Act, Congress there invoked only the Commerce Clause as the authorizing vehicle. *MacPherson* is presently before the Eleventh Circuit on appeal, and it is under submission in that court. What the Eleventh Circuit will say in *MacPherson* may or may not assist in deciding future cases like these.

The United States has intervened in *MacPherson* in support of MacPherson's appellate challenge to this court's conclusion that

the ADEA does not apply to the state as an employer. Likewise, the United States has intervened against the Florida Department of Corrections in *Dickson v. Florida Dept. of Corrections*, Eleventh Circuit No. 96-3773. In *Dickson*, the United States takes the same position that plaintiffs take in the instant cases, namely, that the ADA abrogates Eleventh Amendment immunity because Section 5 of the Fourteenth Amendment empowers Congress to enact "appropriate legislation" to "enforce" the Equal Protection Clause.[1]

This court is aware that other judges of this court are presently dealing with the same issue here being addressed. This court is also aware that neither the Eleventh Circuit nor the Supreme Court has ruled on the present question and that other courts are split on the subject, with the majority seeming to favor the position being taken by plaintiffs in the cases at bar and by the United States as intervenor in *Dickson*.

This court respectfully disagrees with plaintiffs, with the United States in *Dickson*, and with those courts which agree with the United States. Instead, this court thoroughly agrees with the opinion of Judge Graham of the Southern District of Ohio in *Nihiser v. Ohio Environmental Protection Agency*, 979 F. Supp. 1168 (S.D. Ohio 1997). This court need not repeat Judge Graham's rationale

---

[1] In *Amos v. Dept. of Public Safety & Corr. Services*, 126 F.3d 589 (4th Cir. 1997), the Fourth Circuit recently dealt with a state's Eleventh Amendment immunity under the ADA and held, without addressing whether Congress could have made the ADA applicable to state employees, that Congress did not purport to make the ADA applicable to state prisoners. In this court's opinion, the Fourth Circuit's rationale is inconsistent with the position taken by the United States in *Dickson*.

3

except to say that Congress cannot stretch Section 5 and the Equal Protection Clause of the Fourteenth Amendment to force a state to provide allegedly <u>equal</u> treatment by guaranteeing <u>special</u> treatment or "accommodation" for disabled persons, as is purportedly required of states in the two statutes in question. The court in *Nihiser* had available to it not only *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S. Ct. 1114 (1996), the case that precipitated the current debate over Eleventh Amendment immunity versus Congressional intent, but also *City of Bourne v. Flores*, __U.S.__, 117 S. Ct. 2157 (1997). Apparently, *Flores* was not available to, was ignored by, or was misunderstood by those courts that have ruled in favor of applying the ADA and/or the Rehab Act to states and that, in the process, have overridden an early, core principle of federalism, which the states deliberately made difficult to override by their ratification of the Eleventh Amendment.

The Commerce Clause provides a legitimate basis for the Congressional enactment of broad remedial legislation applicable to private parties. See *Katzenbach v. McClung*, 379 U.S. 294, 85 S. Ct. 377 (1964). However, Congress has pressed to the limit its powers under the Commerce Clause. It was brought up short by *Seminole Tribe*, where the Supreme Court determined that Congress stepped over the line. Then, in *Flores*, the Supreme Court made plain that Congress cannot simply contrive, by what might be described as "artful pleading," some justification for its application of a remedial statute to a state when it is obvious

4

that the statute cannot fairly be described as one designed to implement or to "enforce" the Equal Protection Clause or any other guaranty contained in the Constitution that can override the Eleventh Amendment.  Under the Commerce Clause, this court would venture to say that Congress probably could succeed in the enactment of legislation that would require _private_ employers to treat literate and illiterate employees alike and/or that would require _private_ employers to treat non-English-speaking and English-speaking employees alike.  As recently recognized by the Fourth Circuit in *Brzonkala v. Virginia Polytechnic Institute and State University*, 1997 WL 785529 (4th Cir.), under the teaching of *U. S. v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995), the only limitation on Congress under the Commerce Clause is that the regulated activity have a substantial effect on commerce and that Congress have a rational basis for its legislative solution to the perceived problem.  If the Fourth Circuit was correct when it determined that the Violence Against Women Act rationally addresses a matter substantially affecting commerce, this court is also correct in assuming that Congress can, pursuant to the Commerce Clause, order private employers not to discriminate against illiterates or against non-English speakers as a matter of regulatory commerce.  However, this court seriously doubts that Congress could base such an enactment on its power to implement the Equal Protection Clause and, thus, to override the Eleventh Amendment.  Without exploring the debate between those who espouse

5

and those who reject "original intent" as the primary means for deciding matters of constitutional interpretation, it is impossible to present a rational argument, pursuant to the Equal Protection Clause, either for <u>unequal</u> treatment of persons or for taking the <u>concept of equality</u> far beyond the guarantees made when the Equal Protection Clause was written and ratified.

In *Flores*, the United States appeared *amicus* and contended that, for the purpose of accomplishing the guarantee of the free exercise of religion under the First Amendment, the Religious Freedom Restoration Act ("RFRA") was permissible enforcement legislation under Section 5 of the Fourteenth Amendment. The Supreme Court firmly disagreed with the United States and said, as this court believes the Supreme Court would say in the two cases at bar, that while Congress has considerable latitude in the exercise of its enforcement power under Section 5, it cannot usurp the function of the judiciary, and it cannot engage in constitutional interpretation by the artifice of calling its interpretation "enforcement." As the prior example illustrates, if a court cannot use an "equal protection" argument to justify <u>preferred</u> treatment in the state-run workplace for illiterates or for non-English speakers, who would be exempted from having to read job instructions in English, then Congress cannot <u>require</u> a state to grant such preferential treatment to its employees simply by purporting to invoke Section 5.

The tertiary reliance by plaintiff in CV 97-AR-0092-S on the

6

FMLA implicates the same Congressional reasoning and authority that Congress employed in enacting the ADA and the Rehab Act, with the same result. Although the FMLA does not refer to Section 5 of the Fourteenth Amendment, it does speak of accomplishing its purpose of promoting family integrity "in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex" and that it will "promote the goal of equal employment opportunity for women and men." 29 U.S.C. § 2601(b)(4) and (5). These statutory expressions are no more than self-serving declarations of the kind criticized in *Flores*. Although they do, perhaps, give the FMLA a better chance at asserting control over the FMLA-proscribed employment practices by states than does similarly self-serving language found in the ADA and the Rehab Act, this court finds this statutory language in the FMLA insufficient to accomplish its purpose.

Separate orders granting defendants' motions for summary judgment will be entered.

DONE this _13th_ day of January, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE